AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No.   '23  MJ2719 |
| Silver iPad with "Garcia 23-516" printed on back, with black cover | ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-2, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18, USC secs. 2422(b), 2251, 2252, 2252a | Coercion and enticement of a minor; attempted coercion and enticement of a minor; sexual exploitation of children; material involving the sexual exploitation of minors; and material constituting or containing child pornography |

The application is based on these facts:

See Attached Affidavit of NCIS Special Agent Brittani Lewis, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Brittani Lewis*

*Applicant's  signature*

Special Agent Brittani Lewis, NCIS

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means).*

Date:  ___July 26, 2023___

*David Leshner*

*Judge's signature*

City and state:  ___San Diego, California___     Hon. David D. Leshner, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Brittani Lewis, Special Agent with the Naval Criminal Investigative Service, being duly sworn, hereby state as follows:

### INTRODUCTION

1.     I make this affidavit in support of an application for a search warrant to search the following electronic devices, as described in Attachments A-1 and A-2, and seize evidence of crimes, specifically, violations of Title 18, United States Code, Sections 2422(b), 2251, 2252, and 2252a, as more particularly described in Attachments B-1 and B-2:

Silver iPhone with "Garcia 23-516" printed on back **(Target Device 1)**

Silver iPad with "Garcia 23-516" printed on back, with black cover **(Target Device 2)**

This search supports an investigation conducted by NCIS, in conjunction with the San Diego Internet Crimes Against Children Task Force (SDICAC), into Ronald GARCIA (**GARCIA**) who is suspected of committing one or more of the crimes mentioned above. A factual explanation supporting probable cause follows.

2.     The **Target Devices** were seized on July 21, 2023, following the interview of **GARCIA** for the coercion and enticement of a minor, attempted coercion and enticement of a minor, sexual exploitation of children, certain activities relating to material involving the sexual exploitation of minors, and certain activities relating to material constituting or containing child pornography in violation of Title 18, United States Code, Sections 2422(b), 2251, 2252, and 2252a. The **Target Devices** are currently in the possession of SDICAC, 9444 Balboa Avenue, San Diego, California 92123.

3.     Based on the information below, there is probable cause to believe that a search of the **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachments B-1 and B-2.

4.     The information set forth in this affidavit is based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, my review of documents and computer records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not set forth each and every fact that I or others have learned during the course of this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5.     I am currently assigned duties as a Special Agent with NCIS. I have been assigned to NCIS since June 2015. From June 2015 to June 2017, I was an intelligence analyst with NCIS. I utilized open source and government databases in order to provide analytical support to criminal investigations.

6.     I have been a Federal Special Agent with NCIS since June 2017. I have completed the three-month Criminal Investigators Training Program and the three-month Special Agent Basic Training Program at the Federal Law Enforcement Training Centers in Glynco, GA. These programs, along with others in separate and additional schooling, provided me with instruction regarding death investigations, sex crimes investigations, narcotics investigations, military law, civilian federal law, and other practical issues for investigators. I am presently assigned to the San Diego Internet Crimes Against Children Task Force. I am

routinely tasked to investigate felony criminal allegations including crimes of violence, child sexual and physical abuse, and crimes related to child exploitation and child pornography, including the illegal production, distribution, receipt, and possession of child pornography. During these investigations, I have conducted interviews, interrogations, and other follow-up investigative endeavors. I have also completed the Northern Virginia-District of Columbia Internet Crimes Against Children Online Undercover Investigations course in August of 2018.

7.      Through my training, experience, and consultation with other law enforcement officers, I have learned that:

a.      There are certain characteristics common to many individuals involved in sexually exploiting children online and receiving, distributing or collecting child pornography.

b.      Those who sexually exploit children online and exchange or collect child pornography may receive sexual gratification, stimulation, and satisfaction from contact with children; from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature and communications about such activity.

c.      Those who sexually exploit children online and trade or collect child pornography may collect sexually explicit or suggestive materials, in a variety of mediums, including photographs, magazines, motion pictures, video tapes, books, slides or drawings, or other visual media, including digital files. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

d.　　In recent cases, some people who have a sexual interest in children have been found to download, view, then delete child pornography on a cyclical and repetitive basis, and to regularly delete any communications about the sexual abuse of children rather than storing such evidence on their computers or digital devices. Traces of such activity can often be found on such people's computers or digital devices, for months or even years after any downloaded files have been deleted.

e.　　When images and videos of child pornography or communications about sexual abuse of children are stored on computers or computer servers, forensic evidence of the downloading, saving, and storage of such evidence may remain on the computers or digital media for months or even years even after such images and videos have been deleted from the computers or digital media.

f.　　Computers, to include mobile computing devices such as smartphones, and the internet have revolutionized the way in which child pornography is produced, distributed, and utilized. They have also revolutionized the way in which those who have a sexual interest in children interact with each other and with minors; adding to the methods used by child pornography collectors to trade child exploitation materials and to sexually exploit children online. Computers and the internet serve four functions in connection with child pornography and the sexual exploitation of minors.  These are production, communication, distribution, and storage.

g.　　Internet-based communication structures are ideal for the child pornography collectors or those seeking to sexually exploit children. Having both open and anonymous communication capabilities allows the user to maintain their anonymity while locating others of similar inclination, or to hide their true identity while seeking out minors online. Once contact has

been established, it is then possible to send messages and graphic images to other trusted child pornography collectors, or to convince a child to send such images or meet for the purpose of sexual activity. Individuals seeking to engage in such activities can use standard internet connections to communicate with one another and distribute pornography. These communication links easily facilitate contacts around the world. Additionally, these communications can be quick, relatively secure, and as anonymous as desired.

h.     A growing phenomenon related to smartphones and other mobile computing devices is the use of instant messaging through mobile applications. Mobile applications, also referred to as "apps," are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat or playing a game. Examples of such apps include LiveMe, Kik, Snapchat, Meet24, and Instagram.

## FACTS IN SUPPORT OF PROBABLE CAUSE

8.     On July 19, 2023, San Diego Police Department (SDPD) Mid-City Patrol took a report from Junior Male ("JM1"), 14 years old, and his father A.M, regarding threatening text messages received by JM1 that he believed came from Ronald Abel GARCIA.

9.     On July 20, 2023, JM1 was fully interviewed and said approximately two weeks ago he went hiking with a group of kids from his church. JM1 said GARCIA was the youth leader who provided a ride to and from the event. JM1 said GARCIA told him he was a Navy sailor. JM1 stated he and GARCIA exchanged phone numbers after the hike. JM1 further stated approximately 20 minutes after providing his phone number to GARCIA, he received a text message to his cellular

phone from an unknown number. The person communicating via the unknown number said they were a female named 'M' who was approximately two years older and knew JM1 from school. JM1 relayed he did not know anyone named M and the person did not provide any further information.

10.     JM1 said after approximately one day of talking, 'M' began requesting sexually explicit images and videos of JM1. JM1 stated he used his cellular phone to send approximately two images of his penis and two videos. JM1 further stated the two videos were of him performing sexually explicit acts. JM1 advised M specifically requested these videos from him. JM1 stated he sent these images and videos through text message. JM1 further stated he sent one video via email, utilizing Google Gmail, because M said the quality was not good through text message. JM1 said M also asked him if he would rape her and her younger brother, to which JM1 replied he would. JM1 stated he said those things because it was what he thought M wanted.

11.     JM1 said following him sending the videos and pictures, M began demanding that JM1 engage in sexual activity with another male, or she would send the pictures and videos to his family, friends, and church. JM1 said M specifically brought up GARCIA as a person with whom JM1 should engage in sexual activity. JM1 stated M made JM1 give her GARCIA's phone number so M could set up an encounter between GARCIA and JM1. JM1 stated that a short time later, JM1, JM1's 12-year old cousin (Junior Male 2, "JM2"), and GARCIA went to the movies. JM1 stated that while at the theater, M texted JM1 and told him to go to the bathroom where GARCIA would be standing with his shirt over his face; JM1 was directed by M to perform oral sex on GARCIA. JM1 further stated he went to the bathroom, saw GARCIA's feet through the bottom of the bathroom stall, and then returned to the theater. JM1 said GARCIA came back into the theater and when asked why he was in the bathroom for so long, GARCIA replied his stomach was upset.

12.     JM1 stated a few days later, M told him to go to the Popeyes Restaurant near his residence where she would meet him in order to engage in sex. JM1 said M told him to be naked, wear a blindfold, and wait in the bathroom. JM1 said he went to the restaurant and waited in the bathroom, using his shirt as a blindfold. JM1 stated after a few minutes, GARCIA walked into the bathroom. JM1 further stated he was surprised GARCIA was there. JM1 stated that GARCIA said M told GARCIA to go to the restaurant if GARCIA wanted to have sex. JM1 said GARCIA told JM1 that GARCIA thought it was a prank, so GARCIA went to see who was setting him up. JM1 stated he confronted GARCIA by asking him if he was M and GARCIA denied that he was M. JM1 said GARCIA further told JM1 that he should not tell his parents or make a report because JM1 could go to jail for 2-3 years for sending his pictures and videos to another person.

13.     JM1 said on approximately July 17 or 18, 2023 he attended a church pool party with GARCIA and JM2. JM1 stated JM2 told him JM2 believed he saw a picture of JM1 on GARCIA's phone. JM2 was subsequently interviewed and said he saw a picture on GARCIA's phone that he believed to be of JM1. JM2 described the photo as a person holding their penis, with their nose and lips visible. JM2 stated he recognized JM1's lips because they are larger and distinct.

14.     JM1 said he talked to GARCIA at the pool party and GARCIA told JM1 he would talk to M and tell her if she didn't leave JM1 alone, GARCIA would use his military skills to find out where she lived. JM1 stated following the pool party, he no longer heard from M.

15.     JM1 said he believed M to be GARCIA. JM1 further stated M used multiple different phone numbers to message him. JM1 said he also received a text message from an unknown number, by a person who identified themselves 'G', during this same time period. JM1 stated G told him he was a male, was attracted to

JM1, and wanted to engage in sexual activity with JM1. JM1 said he told G he was straight and did not want to, and advised G did not reach out again.

16.     On July 21, 2023, GARCIA was interviewed. Prior to the interview, GARCIA was advised of his Article 31(b) rights[1], to which he waived and agreed to talk. GARCIA admitted to creating a fictitious account and posing as a young female named M. GARCIA stated he requested the sexually explicit images and videos from JM1, viewed them, and deleted them afterwards because GARCIA realized it was wrong. GARCIA said he continued to talk to JM1 as M because he was curious to see if JM1 would engage in sexual activity with him. GARCIA said he used the M persona to meet with JM1 and attempt to engage in sexual activity on different occasions, once at the movie theater and once at Popeyes. GARCIA stated he also posed as G to gauge JM1's interest in men. GARCIA stated that he used TextFree[2] to utilize VoIP[3] phone numbers for his communications with JM1 via the M and G personas. GARCIA said he has a problem and struggles with his urges towards minors.

17.     GARCIA had a Silver iPhone with "Garcia 23-516" printed on back (**Target Device 1**) on his person when he arrived to be interviewed. When asked whether the above-described images and videos of JM1 would be found on **Target Device 1**, GARCIA stated that he had deleted the images and videos shortly after receiving them from JM1. GARCIA also stated that **Target Device 1** was the only phone he possessed. GARCIA further advised he had recently gotten an iPad (**Target Device 2**) which was in his barracks room, Building 554, Room 3208,

---

[1] The Uniform Code of Military Justice's equivalent of *Miranda* rights.

[2] A mobile application and web service that allows users to send and receive text messages, as well as make and receive phone calls, using VoIP numbers, for free over the internet.

[3] A technology that allows a user to make voice calls and utilize text messaging services using an internet connection.

Naval Base Point Loma, San Diego, CA, which he stated he regularly used and had cellular data. GARCIA acknowledged that he utilized Apple iCloud backup services[1]. GARCIA provided both devices and signed a consent form. The Silver iPhone with "Garcia 23-516" printed on back (**Target Device 1**) and the Silver iPad with "Garcia 23-516" printed on back, with black cover (**Target Device 2**) were subsequently seized by SDICAC.

## METHODOLOGY

18.    It is not possible to determine, merely by knowing the mobile electronic device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Mobile electronic devices, including cellular telephones and tablets, can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers and installable software now allow for their subscribers and users to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many mobile electronic devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some mobile electronic device models using forensic hardware and software. Even if

---

[1] Apple users that utilize the iCloud backup services are able to synchronize selected content across the devices that the user associates to the same Apple ID.

some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19.    Following the issuance of this warrant, I will collect **Target Device 1** and **Target Device 2** and subject it to analysis. All forensic analysis of the data contained within the **Target Devices** and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## GENUINE RISK OF DESTRUCTION OF DATA

21.    Based upon my experience and training, and the experience and training of other law enforcement agents with whom I have communicated, electronically stored data may be permanently deleted or modified by users possessing basic computer skills. In this case, no genuine risk of destruction exists as the property to be searched is already in the custody of law enforcement personnel.

## PRIOR ATTEMPTS TO OBTAIN DATA

22.    There have been no prior attempts to obtain this data.

## CONCLUSION

23.    Based on the foregoing, I believe there is probable cause to believe items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 18, United States Code, Sections 2422(b), 2251, 2252, and 2252a, as described in Attachments B-1 and B-2 will be found in the properties to be searched, as provided in Attachments A-1 and A-2.

*Brittani Lewis*

Brittani Lewis
Special Agent
Naval Criminal Investigative Service

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 26th day of July 2023.

HONORABLE DAVID D. LESHNER
United States Magistrate Judge

## ATTACHMENT A-2
## ITEMS TO BE SEARCHED

The property/items to be searched is/are described as follows:

Silver iPad with "Garcia 23-516" printed on back, with black cover **(Target Device 2)**

**Target Devices** are currently being held at the SDICAC office, 9444 Balboa Avenue, San Diego, California 92123.

# ATTACHMENT B-2
# ITEMS TO BE SEIZED

Authorization to search the cellular devices described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephones. The seizure and search of the cellular telephones will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, photographs, audio files, video, telephone numbers, contact information, web browsing history, documents, data stored within applications, and location data, for the period of <u>July 1, 2023 up to and including July 21, 2023</u>:

    a.    tending to identify evidence of receipt, storage, or solicitation of sexually explicit images or videos of minors under the age of 18;

    b.    tending to indicate efforts to facilitate the coercion and enticement of a minor and sexual exploitation of a minor;

    c.    tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and VOIP phone numbers—used to facilitate the coercion and enticement of a minor and sexual exploitation of a minor;

    d.    tending to identify evidence indicating how and when the cellular devices were accessed or used to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the device owner;

e.    tending to identify evidence, including but not limited to communications, images, videos, audio files, search and web history, or notes, indicating the device owner's knowledge and intent as it relates to the coercion and enticement of a minor and sexual exploitation of a minor;

f.    tending to identify the user of, or persons with control over or access to, the cellular devices; and/or

g.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 18, United States Code, Sections 2422(b), 2251, 2252, and 2252a.**

The seizure and search of the cellular devices shall follow the procedures outlined in the methodology section in the supporting affidavit.